646 So.2d 1275 (1994)
STATE of Mississippi
v.
David Eugene MAGNUSEN.
No. 91-KA-00905.
Supreme Court of Mississippi.
November 17, 1994.
*1276 Cono A. Caranna, II, Dist. Atty., Gulfport, for appellant.
Cecil G. Woods, Jr., Gulfport, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
David Eugene Magnusen, charged with rape, aggravated assault, two counts of robbery and two counts of burglary of an inhabited dwelling, was incarcerated in the Harrison County Jail for fifteen (15) months without being tried. The charges lodged against him were dismissed by the Circuit Court for the State's failure to grant a constitutionally guaranteed speedy trial. The State of Mississippi, by and through Cono Caranna, the District Attorney for the Second Circuit Court District of Harrison County, requests that this Court find that the trial judge erred in dismissing all charges against Magnusen.
A period of 449 days or fifteen months intervened between Magnusen's arrest on May 30, 1990, for dual felonies in cause numbers 25,691 and 25,692 and the dismissal of those charges following a hearing conducted on August 22, 1991.
The State contends that most of the delay was caused by the defendant and that the remainder of the delay was a product of a congested trial docket and the excusable neglect of an understaffed crime laboratory. The State further contends that under the applicable and traditional balancing test, Magnusen's constitutional right to a speedy trial was not violated and both causes should be remanded for trial.
The trial court paid insufficient attention to the various distinct periods of delay in reaching its conclusion. The delay of some fifteen months was apparently attributed to the State when it is clear that (1) a large part of the delay between February 1, 1991 and August 22, 1991 was attributable to Magnusen and his change of counsel, death in counsel's family, last minute motions, etc., and (2) the delay prior to February 1, 1991 was during a period in which there was no demand for speedy trial and in which the defendant was held on other unrelated older *1277 charges. The most egregious delay is that between May 30, 1990 and indictment, which is attributed to the crime lab and the backlog. This weighs lightly against the State under Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
The trial court did not appear to properly apply the Barker standard in considering the "reason for the delay" factor. The court required that the delay be for "good and sufficient cause" rather than considering the various periods of delay with respect to whether the reason weighed "heavily", a bad reason, "lightly", a negligent reason, or "not at all", a good reason. After careful consideration in a close case, we must reverse and remand and require Magnusen to stand trial.

STATEMENT OF FACTS
On December 14, 1990, two indictments were returned against nineteen-year-old David Magnusen charging him in multiple counts with multiple felony offenses.
The indictment in cause number 25,691 returned December 14, 1990, alleged that Magnusen, on May 19, 1990, burglarized the dwelling house of Evelyn Verchinski and, as part of the same common scheme or plan, committed the offenses of aggravated assault, robbery, and forcible rape.
The indictment in cause number 25,692, also returned December 14, 1990, alleged that Magnusen, on May 11, 1990, burglarized the dwelling house of Clara J. Webb and, as part of the same common scheme or plan, committed the offense of robbery.
On June 12, 1990, Danny Holloway, a detective with the Gulfport Police Department, requested the performance of a rape protocol on twelve articles of evidence he delivered to the Mississippi Crime Laboratory (hereinafter "crime lab") in Gulfport. Fifteen months later, on August 22, 1991, only a hair comparison analysis had been completed by the crime lab. None of the serological work requested by Holloway had been performed. The results of the hair analysis linked Magnusen to the rape of Evelyn Verchinski, who had identified Magnusen as her assailant in a police showup conducted on May 30, 1990.
Holloway waited four months for the rest of the test results before submitting the files to the district attorney's office on October 8, 1990. The district attorney's office, in turn, waited another seven weeks until November 30, 1990, before presenting the cases to the Grand Jury. Indictments were finally returned on December 14, 1990, six and one-half months following the defendant's arrest. There was a delay in setting Magnusen's arraignment because of inadvertence in the court administrator's office. On the day the arraignment was set, Magnusen was without counsel, his lawyer having been permitted by the trial court to withdraw from the case the previous week.
On August 30, 1991, in the wake of an evidentiary hearing conducted on August 22, 1991 the Circuit Court of Harrison County entered an order finding as a fact and concluding as a matter of law:
that the accused David Eugene Magnusen has been deprived of his constitutional right to a speedy trial and is entitled to a dismissal of the charges .. . [and] that unless other charges are pending at the time of this Order, he is to be forthwith released from the custody of the Sheriff of Harrison County.
Other charges were not pending; thus, Magnusen was released from custody. The State of Mississippi appeals to this Court from the dismissal of the indictments following the evidentiary hearing.
During the hearing, the State produced five witnesses: Danny Holloway, a police detective with the Gulfport Police Department; Debra Butler, a forensic serologist with the Mississippi Crime Laboratory, Gulfport branch; Donette Lee, a secretary and witness coordinator with the district attorney's office; Sandra McAdams Gill, an assistant district attorney; and Carolyn Simmons, an assistant circuit court administrator.
David Magnusen testified in his behalf that he was nearly twenty years of age and that he had been incarcerated in the Harrison County Jail since the date of his arrest on May 30, 1990.
Debra Butler testified she was the only serologist for a fifteen county area on the *1278 Mississippi Gulf Coast. The exhibits in question were received at the Gulfport office and sent to Jackson for hair and fiber comparison. The specimens were then returned to the Gulfport laboratory for a serological analysis. According to Butler, it would take eighty man hours to test the exhibits submitted in this case. There is no statutory provision for the state to contract with private laboratories to perform their work.

DISCUSSION
The State argues vigorously that the trial judge erred in finding as a fact and concluding as a matter of law that the State violated Magnusen's constitutional right, as opposed to his statutory right, to a speedy trial when a period of four hundred forty nine (449) days elapsed between his arrest and the date of the hearing adjudicating Magnusen's motion to dismiss the multiple charges.
In Noe v. State, 616 So.2d 298, 300 (Miss. 1993), this Court opined:
The constitutional right to a speedy trial, unlike the statutory right created by § 99-17-1 (Supp. 1992), attaches when a person has been effectively accused of a crime. Box v. State, 610 So.2d 1148 (Miss. 1992); Beavers v. State, 498 So.2d 788 (Miss. 1986).
Magnusen's constitutional right to a speedy trial attached on May 30, 1990, the date he was arrested. Jenkins v. State, 607 So.2d 1137, 1138 (Miss. 1992); Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Jaco v. State, 574 So.2d 625, 629 (Miss. 1990). The charges were dismissed on August 22, 1990, approximately fifteen months or 449 days following his arrest.
In Noe, we also stated:
When a defendant's constitutional right to a speedy trial is at issue, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable. The factors to consider are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.
616 So.2d at 300.
This Court recognized in Beavers v. State:
No mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.
498 So.2d at 790.
We are mindful indeed that no one factor is dispositive of the question. Nor is the balancing process restricted to the Barker factors to the exclusion of any other relevant circumstances. In Barker, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, the Supreme Court stated:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
Before analyzing the four Barker factors individually, we set out the following chronology of events, pleadings, and proceedings which will be useful:

CHRONOLOGY OF EVENTS

Pre-Arrest Events
February 18, 1989 Unrelated crimes of unlawful touching for lustful purposes occur. (Cause Numbers 25,266 and 25,267) These were separate offenses from Cause Numbers 25,691 and 25,692.
May 4, 1989 Defendant arrested for unlawful touching for lustful purposes.
May 11, 1989 Defendant posted bond and released from custody for unlawful touching offenses.
*1279 March 1, 1990 Defendant arrested for an unrelated offense of aggravated assault and bonded out the same day.
May 11, 1990 Crimes of burglary of inhabited dwelling and robbery of Clara Webb (Cause Number 25,692) occur.
May 19, 1990 Crimes of burglary of inhabited dwelling, aggravated assault, robbery and rape of Evelyn Verchinski (Cause Number 25,691) occurs.

Arrest to Indictment

May 30 to December 14, 1990 (6 1/2 months or 198 days)
May 30, 1990 Arrest. Defendant arrested for the crimes occurring on May 11, 1990, and May 19, 1990.
June 12, 1990 Twelve exhibits, including hair and blood specimens, delivered to state crime lab in Gulfport for analytical testing.
June 14, 1990 Preliminary hearing held for crimes occurring on May 11, 1990, and May 19, 1990. Defendant bound over to await the action of the Grand Jury.
August 10, 1990 Defendant's bond in Cause Numbers 25,266 and 25,267 (unlawful touching) revoked. No further bond set for defendant.
October 8, 1990 District Attorney receives files for crimes occurring on May 11, 1990, and May 19, 1990.
November 30, 1990 Charges against the defendant for the crimes of May 11, 1990, and May 19, 1990, presented to Grand Jury.

Indictment to Arraignment

December 14, 1990 to March 28, 1991 (3 1/2 months or 104 days)
December 14, 1990 Indictments Returned. Defendant indicted for burglary of dwelling house (Count I), aggravated assault (Count II), robbery (Count III), and rape (Count IV) [Cause No. 25,691] and burglary of dwelling house (Count I) and robbery (Count II) [Cause No. 25,692].
December 14, 1990 Unrelated aggravated assault "no billed" by the Grand Jury.
December 21, 1990 Indictments in Cause Numbers 25,266 and 25,267 dismissed because the defendant was 17 years of age and the unlawful touching statute only applies when the defendant is 18 years of age or older.
February 1, 1991 Motions. Various "Motions" filed by defendant and attorney Davis in 25,691 and 25,692 including an assertion of right to a speedy trial and a discovery request for crime lab results.
March 1991 Defendant retains new counsel, Cecil Woods, Jr., to obtain a bond reduction.
March 15, 1991 Defendant noticed of arraignment setting in 25,691 for March 25, 1991.
March 20, 1991 Defendant renoticed of arraignment resetting in 25,691 for March 28, 1991.
March 28, 1991 Arraignment set, but no plea or waiver entered by defendant.
April 1, 1991 Defendant's counsel, Cecil Woods, Jr., files a motion to withdraw.
April 1, 1991 Cause No. 25,692 reset for trial on April 8, 1991.
April 1, 1991 Order entered reducing defendant's bond.
April 1, 1991 Order entered allowing defendant's lawyer, Cecil G. Woods, Jr., to withdraw.
April 2, 1991 Order entered revoking defendant's first bond and ordering that no further bonds be set.
April 4, 1991 Order entered appointing Dale Robinson to represent the defendant.

Arraignment to Hearing Adjudicating Motion to Dismiss

March 28, 1991 to August 22, 1991 (5 months or 147 days)
April 8, 1991 First Trial Setting. Arraignment held instead. Defendant appears for arraignment with Dale Robinson as counsel and enters a not guilty plea. Circuit Judge learns that defendant has retained Cecil Woods, Jr., to represent him. Robinson's appointment terminated. Order previously entered on April *1280 1, 1991, allowing Woods to withdraw is rescinded and Woods is reinstated as counsel. Trial reset for June 3, 1991.
April 12, 1991 Defense counsel noticed of trial setting for June 3, 1991.
April 15, 1991 Continuance. Order entered on motion of the court continuing Cause Numbers 25,691 and 25,692 due to assigned judge being engaged in trial elsewhere.
June 3, 1991 Second Trial Setting. Order entered resetting the trial because defense counsel filed a motion for Omnibus Hearing on trial date of June 3, 1991. Continuance granted on motion of court and defense counsel. Trial reset for August 12, 1991.
June 6, 1991 Defense counsel noticed that Omnibus Hearing set June 7, 1991.
June 7, 1991 Omnibus Hearing set, but defense counsel not available because of a death in his family.
July 24, 1991 Defense counsel noticed of new trial setting for August 12, 1991.
July 25, 1991 State files a Motion for Discovery.
August 7, 1991 Motions. Magnusen files, among other things, motions for production and inspection, including a request for crime lab results and an assertion of his right to a speedy, public trial.
August 12, 1991 Third Trial Setting. Trial reset for August 12, 1991.
August 16, 1991 Continuance. On motion of lower court, order entered continuing the trial of 25,691 from August 12, 1991, until August 26, 1991, because the assigned judge engaged in a capital murder trial.
August 20, 1991 Defense files a motion to dismiss.
August 21, 1991 Hearing on Motion to Dismiss set for August 22, 1991.
August 22, 1991 Dismissal. Following a hearing on Magnusen's motion to dismiss, Cause Numbers 25,691 and 25,692 are dismissed for want of constitutionally speedy trial.
August 30, 1991 Order entered dismissing Cause Numbers 25,691 and 25,692.
We turn now to an analysis of the four Barker factors. The trial judge applied the correct legal standard in the form of the traditional four pronged balancing test but reached, in our opinion, an inappropriate result.
(1) Length of the Delay: The delay between arrest and trial was 449 days (approximately fifteen months).
The trial judge found that a delay of 449 days was sufficient to require the State to show that such delay necessitated a review of the remaining Barker factors. We agree.
In Smith v. State, 550 So.2d 406, 408 (Miss. 1989), this Court held "that any delay of eight (8) months or longer is presumptively prejudicial." However, "[t]his factor, alone, is insufficient for reversal, but requires a close examination of the remaining factors." Handley v. State, 574 So.2d 671, 676 (Miss. 1990).
In this case, the State has conceded in its brief "that the delay of 449 days ... is sufficient to warrant an examination of the other Barker factors." The State, however, correctly observes that this delay, standing alone, is not enough to establish a violation of the defendant's constitutional right to a speedy trial. "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria ... it is part of the mix of relevant facts, and its importance increases with the length of the delay." Doggett v. United States, 505 U.S. ___, ___, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, 531 (1992).
The length of the delay not attributable to Magnusen or his lawyer or to the lower court is around 300 days (198 + 104) which, under the facts and circumstances in this case, is not an excessive or inordinate delay. In Smith v. State, 550 So.2d 406 (Miss. 1989); Beavers v. State, 498 So.2d 788 (Miss. 1986); Burgess v. State, 473 So.2d 432 (Miss. 1985); Bailey v. State, 463 So.2d 1059 (Miss. 1985); and Perry v. State, 419 So.2d 194 (Miss. 1982), each defendant, in the wake of a Barker analysis, was discharged following delays of 370, 423, 480, 298, and 566 days, respectively. We give Magnusen the benefit of any doubt. This factor favors the defendant, *1281 necessitating scrutiny of the case as to the remaining Barker factors.
(2) Reason for the Delay: The reason for delay included chronic congestion of trial docket; unavailability of evidence potentially material to State's case as well as potentially exculpatory; heavy case load; understaffing and negligence of the crime laboratory; incarceration on other charges after bond revoked; substitution of defense counsel; three (3) continuances; unheard motions filed by the defense; and unavailability of judge at the time the trial was scheduled. This factor, viewed in its three part totality, favors the State, although slightly. At the very least, it weighs equally against the State and the defendant.
In the Barker case, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117, the Supreme Court of the United States asserted:
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
(emphasis supplied)
In the case at bar, 198 days or 6 1/2 months elapsed between arrest and indictment, 104 days or 3 1/2 months intervened between indictment and arraignment, and there were 147 days or 5 months intervening between arraignment and the hearing on the motion to dismiss the charges.
The trial judge articulated two reasons for the delay. First, the crime lab reports had not been received and some testing had not been completed. The court stated that when the accused is in custody such a delay is "unreasonable." Second, the accused was in custody due to his potential danger to the community. The court found this also to be unreasonable because Magnusen's bond had been revoked for charges which had not yet been proven.
We place great emphasis on the fact that the State, in opposing Magnusen's motion for dismissal, produced live testimony from a police officer, a crime laboratory specialist, a judicial assistant for the office of the district attorney, the assistant district attorney assigned to the case, and a court administrator, in support of its opposition to dismissing the charges.

Arrest to Indictment

May 30 to December 14, 1990 (6 1/2 months or 198 days)
The most critical period of delay is the 198 day preindictment delay between Magnusen's arrest on May 30 and his indictment on December 14, 1990. We weigh this portion of the delay against the State but not heavily.
The trial judge found as a fact that both the Gulfport Police Department and the district attorney's office "had done their job." He found that the fault lay with the neglect of the crime lab, one of many tentacles of the State. It is unclear from the testimony of Debra Butler whether this neglect was excusable or without just cause. The delay certainly was not intentional. What is clear is that from June 14, 1990, to November 30, 1990, a period of approximately 5 1/2 months, the district attorney's office awaited the results of the laboratory testing before presenting the case to the grand jury. This was not a case of deliberate inaction to delay Magnusen's trial. Moreover, the results of the serology tests could have just as easily been exculpatory as not.
On the other side of the coin, a blood specimen taken from the victim in May of 1990 was allowed to putrefy before it was tested, thereby necessitating a requirement for a new specimen. Negligence causing delay should be weighed against the State but not heavily. Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; Adams v. State, 583 So.2d 165, 168 (Miss. 1991) ("[T]his delay is the result of mere *1282 negligence and should not weigh heavily against the state.")
An additional observation is that Magnusen's bond set in the wake of the fondling charges was revoked on August 10, 1990. It seems that Magnusen would have been in jail on these charges even if not incarcerated on the others. It was not until December 21, 1990, a period of 133 days, that the fondling indictments were dismissed because of an age discrepancy.
In the final analysis, the official neglect of an understaffed and overworked crime lab gives this portion of the delay to the defendant but barely.

Indictment to Arraignment

December 14, 1991 to March 28, 1991 (3 1/2 months or 104 days)
We weigh this portion of the delay equally because of the substitution of counsel. Magnusen's two cases had not been set for arraignment any sooner because of inadvertence of the court administrator. Moreover, the testimony reflects that a 3 1/2 month delay from indictment to arraignment is not an unusual length of time. Finally, the State was under a continuing duty to disclose by virtue of the defendant's discovery request for crime lab results, filed February 1, 1991.

Arraignment to Hearing Adjudicating Motion to Dismiss

March 28, 1991 to August 22, 1991 (5 months or 147 days)
The bulk of this delay is attributed to the defendant who was without counsel near the day of arraignment because his lawyer had been permitted to withdraw on April 1, 1991. A congested trial docket and three continuances also contributed to this portion of the delay which weighs heavily against Magnusen.
First, within the context of our 270 day rule and the defendant's statutory right, as opposed to his constitutional right, to a speedy trial, docket congestion has been held to constitute good cause for delay. Polk v. State, 612 So.2d 381, 387 (Miss. 1992); Adams v. State, 583 So.2d 165, 167 (Miss. 1991); Yarber v. State, 573 So.2d 727, 729 (Miss. 1991); Williamson v. State, 512 So.2d 868, 877 (Miss. 1987). While a crowded docket will not automatically suffice to establish good cause, McGee v. State, 608 So.2d 1129, 1133 (Miss. 1992), the specific facts of the case may give rise to good cause. The same rationale should apply when the defendant's constitutional right to a speedy trial, as opposed to his statutory right, is at issue.
Second, during the period from April 15, 1991, to August 16, 1991, a total of three continuances were granted on motion of either the court, the defendant, or both. The reasons for the continuances were, at least in part, a crowded docket, the unavailability of the circuit judge who was engaged in trial elsewhere, and the defendant's motion for an omnibus hearing filed on June 3, 1991, the day the case was set for trial.
The first continuance was granted on April 15, 1991, upon motion of the circuit judge who was engaged in trial elsewhere. The second continuance was granted on June 3, 1991, upon motion of both the court and the defendant because the defendant filed a motion for an omnibus hearing the day of trial. Trial was reset for August 12, 1991. The third continuance was granted August 16, 1991, upon motion of the circuit judge who again was engaged in trial elsewhere. Trial was reset for August 26, 1991. A delay of 129 days between April 15, 1991, and August 22, 1991 (the day the charges were dismissed), was a by-product of continuances granted because of (1) a congested trial docket and (2) the defendant's motion for an omnibus hearing.
Delays caused by overcrowded dockets are not to be weighed heavily against the State. Adams v. State, 583 So.2d at 167; Williamson v. State, 512 So.2d 868, 876-77 (Miss. 1987); Kinzey v. State, 498 So.2d 814, 816-17 (Miss. 1986); Bailey v. State, 463 So.2d 1059, 1063 (Miss. 1985).
Continuances granted to the defendant toll the running of our speedy trial statute and should not be counted against the State. Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990) citing Vickery v. State, 535 So.2d 1371, 1375 (Miss. 1988). Again, the same rationale *1283 should apply when a defendant's constitutional right, as opposed to his statutory right, to a speedy trial is at issue. Accordingly, over 100 days during the period from April 15, 1991 to August 22, 1991 should be deducted from the total number of days sandwiched between Magnusen's arrest and trial.
Thus, the length of the delay not attributable to either the defendant or his lawyer is approximately 300 days or ten months.
(3) Assertion of Right: Magnusen asserted his constitutional right to a speedy trial in a multi-faceted motion filed February 1, 1991, by attorney Davis; again in a multi-faceted motion filed August 7, 1991, by attorney Woods; and again on August 20, 1991, in the Motion to Dismiss charges filed by attorney Woods. This factor favors the defendant and weighs against the State but not heavily.
The trial judge found as a fact that Magnusen demanded a speedy trial by motions dated February 1, 1991, and August 7, 1991, and that all parties concerned were on notice from February 1 forward that Magnusen was demanding a speedy trial.
Buried in the midst of a four page, eleven paragraph document filed February 1, 1991, by attorney Davis and styled simply "Motions," is a three line statement found under paragraph VII in which Magnusen "asserts his right to a speedy, public trial by jury as guaranteed under the 6th Amendment... ."
On August 7, 1991, attorney Woods filed a similar multi-faceted motion which contained in paragraph VII Magnusen's assertion to his right to a speedy trial.
In his "Motion to Dismiss" filed August 20, 1991, Magnusen claimed: the length of the delay was 455 days; the reason(s) for the delay was not known; he had previously asserted his right to a speedy trial, and he had been prejudiced by the delay because the availability and memories of witnesses had faded.
The State, of course, bears the burden of bringing an accused to trial in a speedy manner. Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988). Although the defendant has neither a duty nor an obligation to bring himself to trial, points are placed on his side of the ledger when, as here, he has made a demand for a speedy trial. Jaco v. State, 574 So.2d 625, 632 (Miss. 1990).
This factor favors the defendant, but only slightly. This is because the bulk of the delay from February 1, 1991, when Magnusen first asserted his right to a speedy trial, to August 22, 1991, when the charges were dismissed, can reasonably be charged to the defendant while the reasons for other portions of the delay are, at best, neutral. Moreover, certain actions by defense counsel were in derogation of Magnusen's assertion of his right to a speedy trial.
Immediately after asserting his right to a speedy trial by and through attorney Davis, Magnusen retained a new lawyer, Cecil Woods, Jr., in March of 1991. On April 1, 1991, Woods filed a motion to withdraw, and an order was entered allowing him to do so. On April 4, 1991, attorney Dale Robinson was appointed, and on April 8, 1991, Magnusen was arraigned even though the State was prepared to go to trial as scheduled. Woods was reappointed on April 8, 1991, and trial reset for June 3, 1991. On April 15, 1991, the lower court, on its own motion, entered a continuance because the circuit judge was engaged in trial elsewhere.
On June 3, 1991, the State was again prepared to go to trial without the crime laboratory results. Magnusen, by and through attorney Woods, filed a motion for an omnibus hearing which was set but never held due to a death in defense counsel's family. On a later date, due to the engagement of the circuit judge in a capital murder case, once again the omnibus hearing although set, was not conducted.
In addition to this, Magnusen filed motions which he never set for hearing. The multi-faceted motions filed on February 1, 1991, and August 7, 1991, were never set for hearing by the defendant. Such, in our opinion, detracts from the assertion of his right to a speedy trial.
The record reflects the State was ready, willing and able to go to trial on four separate occasions, April 8, June 3, August 12, and August 16, 1991, but was prevented from *1284 doing so by circumstances clearly not the fault of the State. We weigh this Barker factor in favor of Magnusen, but barely.
(4) Prejudice to the Defendant: No actual prejudice to Magnusen was demonstrated by the delay. There was presumptive prejudice only. This factor favors the State.
The only prejudice articulated by the trial judge in his written order was that the defendant "lost his freedom" on the date of the arrest on charges which had gone untried for over a year. Although Magnusen testified at the evidentiary hearing, no claim of prejudice was made at that time. The only such inference appears in Magnusen's motion to dismiss filed on August 20, 1991. Therein, blatant allegations are made that witnesses may not be available and apparently the memories of those witnesses who are available have faded. No such suggestion was made during the actual hearing. We would again note that during a large part of 1990, Magnusen was incarcerated on other charges after his bail was revoked.
This prong of the Barker analysis was discussed as follows:
A fourth factor is prejudice to the defendant. Prejudice of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
Barker, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. (emphasis supplied). The prejudice prong of the Barker analysis encompasses interference with a defendant's liberty and actual prejudice in defending his case.
In Smith v. State, 550 So.2d at 408, we noted "that any delay of eight months or longer is presumptively prejudicial." See also Jenkins v. State, 607 So.2d at 1139; Adams v. State, 583 So.2d 165, 168 (Miss. 1991). The fifteen month delay in the case sub judice clearly flunks the eight month test. Accordingly, a 449 day delay from the date of arrest until trial or dismissal was presumptively prejudicial.
The defendant testified in his own behalf during the hearing on August 22, 1991, but neither alleged, suggested, nor demonstrated any prejudice to the preparation of his defense or to his case in general.
As for the first interest, Magnusen was incarcerated from May 30, 1990, until the charges were dismissed on August 22, 1991, a period of almost 450 days. A healthy number of days, however, should be weighed against the defendant. The 147 day time frame between March 28, 1991, and August 22, 1991, is weighed more heavily against Magnusen than against the State. The remaining ten (10) month period of incarceration is the same period of incarceration found in the Barker case where the Supreme Court of the United States held that Barker was not denied his right to a speedy trial.
The preindictment delay occasioned by the neglect of the crime laboratory in failing to conduct the tests on the eleven remaining exhibits is considered neutral and not weighed heavily against the prosecution, which did not act unreasonably.
The period of incarceration between May 30, 1990, and December 21, 1990, can be attributed, at least in some significant part, to other felony cases pending against Magnusen. In May of 1990, and again in March of 1990, Magnusen was arrested on unrelated charges of fondling and aggravated assault. While out of jail on bond, Magnusen was arrested on May 30, 1990, for the two offenses occurring on May 11 and May 19, 1990.
On December 14, 1990, the aggravated assault was "no billed," and on December 21, *1285 1990, the two indictments returned in the fondling cases were dismissed, not because Magnusen was not the perpetrator, but because Magnusen was only seventeen years of age. The statute required that the defendant be eighteen years of age in order to be charged with fondling. The circuit judge, at one point in particular, absolutely considered Magnusen a person who posed a potential threat to the community and society.
No proof was offered by the defendant that his employment or family life was disrupted or his financial resources drained or his associations curtailed; to the contrary, a document filled out and signed by the defendant on April 4, 1991, reflects that Magnusen was single and unemployed. Although Magnusen was incarcerated from the time of his arrest to dismissal of the charges, we cannot categorize his pretrial incarceration as particularly "oppressive."
The second interest protected by the constitutional right to a speedy trial is minimizing anxiety and concern. There was no proof during the hearing that Magnusen suffered an extraordinary, or even an ordinary, amount of anxiety and concern over this particular case. There were several serious charges pending against him, including two fondling charges. While Magnusen may have had a right to be anxious and concerned, not all of his woes and tribulations were a product of the charges preferred in this case.
The third interest protected by the constitutional right to a speedy trial is that of minimizing the possibility that the defense of the accused will be impaired. There has been no allegation that the defense was impaired because of a loss of witnesses or their memories. In short, there has been no demonstration of actual prejudice to Magnusen in preparing for the defense of his case. Although the delay in this case is presumptively prejudicial, we will not infer prejudice to the defense out of the "clear blue."
In the final analysis, where, as here, the delay is neither intentional nor egregiously protracted, and where, as here, there is an absence of prejudice, we find this factor favoring the State.

CONCLUSION
On balance, an analysis of the Barker factors, when considered together with other relevant circumstances, favors the State, but not heavily. While there was delay, the length of the delay was not inordinate. Moreover, there was both a reasonable and legitimate justification for some portions of the delay for which the State was not at fault. Further, Magnusen's testimony did not mention or even suggest the existence of prejudice. The mere specter of prejudice is not a viable basis for reversal. Adams v. State; Wiley v. State, 582 So.2d 1008 (Miss. 1991); Handley v. State; Jaco v. State.
The trial court paid insufficient attention to the various distinct periods of delay in reaching its conclusion. Additionally, the trial court erroneously required that the delay be for "good and sufficient cause" rather than whether the reason weighed "heavily", "lightly" or "not at all."
In summary our analysis of the Barker factors is as follows:

(1) Length of the Delay. Favors the defendant to the extent inquiry into the other three Barker factors is required.

(2) Reason for the Delay. Favors the State slightly or, at best, is a neutral factor.
a. Arrest to Indictment (198 days). Weighs against the State but not heavily.
b. Indictment to Arraignment (104 days). Neutral due to substitution of counsel.
c. Arraignment to Hearing Adjudicating Motion to Dismiss (147 days). Favors the State heavily.

(3) Assertion of Right. Favors the defendant slightly. Weighs against the State but not heavily.

(4) Prejudice to the Defendant. Favors the State clearly.
Under the totality of the Barker factors, the balance is struck in favor of the State. The circuit judge used an improper legal standard by requiring that the reason be for "good and sufficient cause" in weighing the Barker factors. He placed too much weight on the negligence of the crime lab and failed *1286 to properly focus on the various distinct periods of delay in reaching his conclusion. The judgment of the trial court is reversed and the matter is remanded for Magnusen to stand trial on all charges.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by PITTMAN and McRAE, JJ.
SULLIVAN, Justice, dissenting:
The lower court correctly found a violation of Magnusen's constitutional right to a speedy trial. We must adhere to the judgment of the lower court as if we were reviewing a finding by a jury, and only reverse if the finding is not supported by substantial evidence in the record. Because I believe we must affirm the lower court's ruling, I respectfully dissent.
The majority opinion rests on the faulty premise that the trial court decided this issue using the wrong legal standard. Justice Smith states at page two of his opinion:
The [trial] court required that the delay be for "good and sufficient cause" rather than considering the various periods of delay with respect to whether the reason weighed "heavily," a bad reason, "lightly," a negligent reason, or "not at all," a good reason.
True, the trial court considered whether the state showed "good and sufficient cause" for the delay; however, the trial court did so in conjunction with its determination of how much weight to accord the justification offered. The trial court correctly relied on State v. Ferguson, 576 So.2d 1252 (Miss. 1991), for the proposition that once the delay has been determined to be presumptively prejudicial, "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." Id. at 1254 (Emphasis added). This Court also stated in Ferguson that "[w]here the accused has not caused the delay, and where the prosecution has failed to show good cause therefor, this factor [reason for the delay] weighs in favor of the accused." Id. (Emphasis added); citing, Handley v. State, 574 So.2d 671, 676 (Miss. 1990); Trotter v. State, 554 So.2d 313, 317 (Miss. 1989); Smith v. State, 550 So.2d 406, 409 (Miss. 1989); Perry v. State, 419 So.2d 194, 199 (Miss. 1982).
The trial court, after taking a recess in order to carefully consider this matter, stated:
Even going back from the date of arrest until the date of arraignment, there was 310 days, and certainly none of that time could be charged to the defendant for his creating the delays. Once the delay has been established, the teachings of Ferguson tell us that the burden shifts to the State at that point in time, presumptively that the delay is one which would cause prejudice and create an obligation on the State to show justifiable cause for the delay.
The cause for delay has been argued by the State by the documents of the overloaded docket, which I will certainly be willing to take judicial notice of that I have been an active participant in these dockets. I know how overcrowded they are. We also must take into account the fact that in this district, three judges have to divide three counties, one county having two districts in it.
Manpower for carrying out the State's burden, or the lack of manpower in carrying out the State's burden of guaranteeing a speedy trial is the State's burden or a legislative matter to be taken care of, and not the defendant's obligation. However, weighing that as lightly as possible to the State, the cause for delay certainly cannot be attributable to the defendant. (Emphasis added).
It is clear that the trial court properly applied the Ferguson case, and, contrary to the majority opinion, considered how heavily to weigh this factor in light of the state's justification. My point is clearly evidenced by the court's determination to weigh the state's negligence lightly in favor of Magnusen.
Justice Smith urges this Court to find that the trial court erred by considering whether *1287 the state showed "good and sufficient cause for the delay," and then simultaneously justifies the result reached today in part based on "reasonable and legitimate justification" for some of the delay. Is a showing of "good and sufficient cause" for the delay not virtually the same thing as "reasonable and legitimate justification" for the delay? In my mind these concepts are very close to being two ways of saying the same thing. I must wonder whether the majority thinks the state's justification for the delay is relevant or not. If it is, then the trial court clearly applied the correct legal standard. If it is not, the majority gains no ground by arguing that the state should not be held accountable for certain periods of delay because they were legitimately justified.
Justice Smith correctly acknowledges the fact that the length of delay in this case warrants examination of the remaining Barker factors. It is with Justice Smith's reasoning beginning with the second constitutional speedy trial factor, "reason for the delay," that I must disagree. The trial court found that the cause of the delay "certainly cannot be attributable to the defendant." We cannot find to the contrary short of concluding that the lower court was manifestly wrong in making this finding. Jenkins v. State, 607 So.2d 1137 (Miss. 1992). Instead, the majority simply reexamines the record, splits the 455 day delay into different periods of delay, argues that the court applied the wrong legal standard, and somehow reaches the conclusion that the cause of delay weighs against Magnusen, or, "[a]t the very least, it weighs equally against the State and the defendant." Majority opinion at page 11.
However, Justice Smith concedes on at least two occasions in his opinion that the period of delay not attributable to the defendant or his lawyer is approximately 300 days. This period alone is enough to establish a constitutional speedy trial violation. We have stated on many occasions, and the majority again recognizes today, that a delay of eight months is sufficient to require examination of the other three Barker factors.
The state crime lab was negligent in allowing a blood sample to putrefy. It is noteworthy that at the time of the hearing on the Motion to Dismiss, the crime lab had still not completed the lab work. Further, the arraignment was inadvertently held up because certain documents were misplaced by the assistant circuit court administrator. Moreover, some of the post-demand delay clearly weighs against the state because of the congested court system. While it is true that a portion of the delay is attributable to Magnusen because of his lawyer's absence due to a death in his family, I cannot find that the trial court was manifestly wrong in lightly weighing the second Barker factor against the state.
I furthermore disagree with Justice Smith's implication that docket congestion should be considered good cause to the extent that the constitutional speedy trial clock should be deemed to have stopped running during those periods of delay. The Barker Court stated:
Overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
Id., 407 U.S. at 531, 92 S.Ct. at 2192. Furthermore, it is no excuse that the state crime lab is understaffed. Justice White stated in his Barker concurring opinion:
Unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the state's criminal justice system are limited and that each case must await its turn. As the court points out, this approach also subverts the state's own goals in seeking to enforce its criminal laws.
Id., 407 U.S. at 538, 92 S.Ct. at 2196. In accordance with Barker, we have held that periods of delay as a result of overcrowded dockets weigh against the state, although not heavily. Adams v. State, 583 So.2d 165, 169 (Miss. 1991).
I must also disagree with the emphasis the majority places on the fact that Magnusen, on June 3, 1991, filed a motion for an omnibus hearing. This may have caused some delay; however, defense counsel argued to *1288 the court, and the court, as trier of fact, apparently accepted the argument, that this motion was filed in part because of the failure of the prosecution to provide defense counsel with information that had been previously demanded. Further, with regard to the argument that the state was prepared to proceed to trial beginning in April, 1991, it is important to note that the crime lab had still not completed all the lab work at the time of the Motion to Dismiss this matter in August, 1991.
The fact that Magnusen could have benefitted from the lab reports does little to help the state's argument. Irrespective of who might receive the most benefit from the lab results, the state is responsible for proving guilt beyond a reasonable doubt, and the state is responsible for doing so in accordance with our discovery rules and the speedy trial mandate of the Sixth Amendment. Even if the state was prepared to proceed to trial in April, 1991, that was just shy of one year from the time of Magnusen's arrest  his constitutional right to a speedy trial had already been violated.
It is clear that there exists substantial evidence supporting the trial court's finding that the reason for the delay should weigh, although lightly, against the state. In fact, the assistant district attorney essentially admitted that the reason for delay should weigh against the state by attempting to de-emphasize this factor in his argument before the court, making the following statement: "So I don't think there's a heavy weight against the State of Mississippi for the reason of delay." He was correct  this factor should weigh, as the court found, lightly against the state. The court did not apply an incorrect legal standard and was not manifestly wrong in making its determination on this factor.
Even though the majority acknowledges that Magnusen demanded a speedy trial, much is made of the fact that Magnusen did not assert his right to a speedy trial until February 1, 1991. However, what the majority does not mention is the fact that this prong of the balancing test is not essential to a successful claim that one's right to a speedy trial has been violated. True, we have stated that where a defendant utterly fails to make a speedy trial demand, he loses points where he would otherwise have gained points. Jaco v. State, 574 So.2d 625 (Miss. 1990).
Magnusen, however, did not fail to assert his right. He made his first speedy trial demand on February 1, 1991, shortly after the indictment was returned against him, after a period of delay attributable to the state because of the negligence of the state crime lab. He did not knowingly delay in making his demand. The trial court simply found that this factor, assertion of the right to a speedy trial, weighs in his favor. Today's decision does not, in my opinion, place the proper importance on Magnusen's assertion of his right. Moreover, the inference that the prosecution should not be held to have been aware of the speedy trial demand because it was buried in a lengthy motion is not persuasive. Magnusen clearly asserted his right on page three, paragraph VII, of his document entitled Motions, filed on February 1, 1991, and forwarded to the district attorney's office.
Because the first three factors weigh in Magnusen's favor, it is not necessary to examine the fourth Barker factor, prejudice to the defendant. Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975). Nonetheless, the trial court weighed this factor in Magnusen's favor. The court stated:
Prejudice to the accused, as I pointed out to counsel for the State when the argument was being made about the showing of prejudice, I know of nothing that is more prejudicial to anyone than to be confined for a period of 447 days without the benefit of a trial. It's somewhat likened to getting the cart before the horse, because once again, the State does carry the burden of proving a person's guilt, not assuming the person's guilt.
First, when a presumption of prejudice has been established, as it was in this case, a defendant is not responsible for proving prejudice. That is, the prosecution is responsible for rebutting the presumption that the defendant has suffered prejudice as a result of the delay. Bearing the burden to persuade otherwise, the prosecution runs the risk of nonpersuasion on this element of speedy trial *1289 analysis. Doggett v. U.S., 505 U.S. ___, ___, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992).
The majority correctly points out the fact that in Barker, the Court found that the defendant did not suffer oppressive pretrial incarceration for a period of time similar in length to that Magnusen spent in jail prior to trial through no fault of his own. In Barker, however, the Court took specific notice of the fact that Barker did not want to be tried  he allowed the state to continue his case sixteen (16) times without objection. Here, as mentioned earlier, Magnusen filed his speedy trial demand approximately six weeks after he was indicted  Barker waited approximately three and one-half years. The Barker Court's reasoning regarding the defendant's desire to be tried, and how that desire relates to the question of whether the defendant suffered oppressive pretrial incarceration, favors Magnusen.
Justice Smith also claims that Magnusen's pretrial incarceration cannot be categorized as "particularly `oppressive'" because Magnusen filled out a Petition for Appointment of Attorney stating that he was single and unemployed. However, this same form indicates that prior to his incarceration Magnusen was nineteen (19) years of age and lived with his mother in Gulfport, Mississippi. Although Magnusen was not responsible for proving he was subjected to oppressive pretrial incarceration, certainly it can be safely presumed that his family life was disrupted. Furthermore, incarceration of this young man for fifteen months without holding trial certainly did not help him obtain employment.
Further, notwithstanding the contrary assertion in the state's brief, or the lack of emphasis placed on this point by the majority, Magnusen clearly argued in his Motion to Dismiss that the delay caused his defense to suffer because "the Witnesses' memories have faded, and the witnesses may not be available...." The Barker case specifically recognizes, and the majority opinion cites the part of the opinion that so states, that witnesses' loss of memory is prejudicial. Majority opinion at 1284. This argument was clearly raised before the trial court.
While it is true that Magnusen did not make the prejudice argument while testifying at the hearing on his Motion to Dismiss, it must be remembered that the onus was never on him to persuade the trial court, nor is it now his burden to convince this Court on appeal, that his defense suffered prejudice. Further, this is not a situation analogous to a post-conviction relief petitioner who attempts to argue on appeal what he failed to raise at the trial court level. It was never Magnusen's responsibility to raise the very argument for which the majority faults him for failing to assert at his hearing. Even if he had not alleged prejudice in his Motion to Dismiss, the state nonetheless ran the risk of non-persuasion on this prong of the Barker test. Other than claiming that Magnusen never made this argument, which is incorrect, the state wholly failed to rebut what this Court is obligated to presume, that Magnusen in fact suffered prejudice.
It is true that during some of the time Magnusen was incarcerated he had other charges pending against him. However, those charges were eventually either dismissed as a matter of law or no true billed by the grand jury roughly around the same time he was finally indicted for the offenses surrounding this case. He then spent approximately eight more months in jail awaiting trial. I do not believe we can say with any confidence that Magnusen suffered no anxiety and concern over these charges.
I believe today's decision fails to give the proper deference to the findings and conclusions of the trial judge who served as a part of the proceedings against this defendant from their inception, and throughout, until the charges were dismissed against him. The majority admits that this is a close case, and as such, we should affirm the lower court's decision. The trial court applied the correct legal standard and reached the correct result. Because I believe we cannot reverse this case on the record before us, I respectfully dissent.
PITTMAN and McRAE, JJ., join this opinion.