# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-00537-SCT

*VIRGIL N. JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2008 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/30/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Virgil Johnson was convicted of aggravated assault in Hinds County Circuit Court.

Johnson appealed, and the Court of Appeals affirmed his conviction and sentence.  We

granted certiorari.  Because Johnson's right to a speedy trial was not violated, and because

Johnson was not prejudiced by the trial court's refusal to grant Johnson's for-cause

challenges of two prospective jurors, we affirm the trial court and the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 28, 2006, Jeremy Boyd was shot four times at his home in Jackson, Mississippi. While at the hospital, Boyd told police officers that he had been shot by Virgil Johnson. Boyd also identified Johnson from a photographic lineup. On April 20, 2006, officers arrested Johnson, and he was indicted on February 6, 2007, and charged with aggravated assault and armed robbery. On April 4, 2007, a year after Johnson was arrested, he moved the court for a "fast and speedy trial." Johnson was arraigned on April 16, 2007. His bond was set at $100,000, which he could not pay, so he remained in jail. Johnson filed a motion for a reduction in bond. On December 10, 2007, Johnson moved to dismiss for failure to grant a speedy trial. The trial court did not address any of Johnson's motions.

¶3.     Johnson's trial was held March 11, 2008. At trial, Boyd testified as to what had occurred on the day he was shot. According to Boyd, he invited Johnson over to his home because he had planned to buy a vehicle and wanted Johnson's advice. Boyd was a professional barber, and when Johnson arrived he offered to give him a haircut. After the haircut, Boyd recounted that he and Johnson smoked weed and played video games. Boyd noticed that Johnson had become quiet, and he asked Johnson if things were all right. Boyd continued to play the video game. Boyd recalled that his gun was on the floor beside his feet, and that he saw Johnson get up. Boyd said he thought Johnson had gone to the restroom, but instead, Johnson came up behind him and shot him in the back of the neck. Boyd testified that Johnson immediately shot him again. Boyd said that Johnson shot him two more times, even though he was pretending to be dead. Then, Johnson flipped Boyd over and took $1,900 that Boyd had planned to use to purchase the vehicle. According to Boyd, Johnson then fled the scene. Boyd called 911.

2

¶4.    The jury convicted Johnson of aggravated assault.  The Court of Appeals affirmed the conviction, finding no reversible error.  Johnson petitioned for writ of certiorari, which this Court granted, and raises two issues.

    **I.**      **Whether Johnson's right to a speedy trial was violated**.

    **II.**      **Whether Johnson's for-cause challenges should have been granted**.

**DISCUSSION**

    **I.**      **Whether Johnson's right to a speedy trial was violated**.

¶5.    Johnson asserts that his constitutional right to a speedy trial was violated, because 680 days passed between the time of arrest and the date of his trial.  The Court of Appeals found no merit in Johnson's averment. We agree with the Court of Appeals, and affirm the trial court.

¶6.    The Sixth Amendment to the United States Constitution provides an accused the right to a "speedy and public trial."[1]  And the Mississippi Constitution establishes an almost identical protection.[2]  In *Barker v. Wingo*, the Supreme Court provided four factors to consider whenever a defendant claims that his constitutional right to a speedy trial has been violated: length of delay, reasons for delay, whether the defendant asserted his right to a speedy trial, and whether the defense suffered any prejudice from the delay.[3]  Where the length of delay exceeds eight months, the delay is presumptively prejudicial and triggers

---

[1]U.S. Const. amend. VI.

[2]Miss. Const. art. 3, § 26.

[3]*Jenkins v. State*, 947 So. 2d 270, 276 (Miss. 2006); *Manix v. State*, 895 So. 2d 167, 176 (Miss. 2005) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972)).

3

further analysis of the remaining three **Barker** factors. These factors must be considered together with other relevant circumstances.[4]

*Length of delay*

¶7.    In **Smith v. State**, this Court determined that a delay of eight months or longer is presumptively prejudicial.[5]   But let us be clear; when the delay is presumptively prejudicial that does not mean that *actual* prejudice to the defendant exists.  Rather, actual prejudice is determined at a different point in the **Barker** analysis.  A "presumptively prejudicial delay" acts as a triggering mechanism for further inquiry into the **Barker** analysis, and shifts the burden to the State to show the reason for delay.[6]  Even the United States Supreme Court recognized this logic in **Doggett v. United States**, when it noted that "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the **Barker** inquiry.[7]

¶8.    Here, 680 days passed between Johnson's arrest and his trial, so the delay is presumptively prejudicial.  The benefit of this presumption is further examination of the

---

[4]**Barker**, 407 U.S. at 533.

[5]**Smith v. State**, 550 So. 2d 406, 408 (Miss. 1989).

[6]**Doggett v. U.S.**, 505 U.S. 647, 652, 112 S. Ct. 2686, 2691, 120 L. Ed. 2d 520 (1992); **Barker**, 407 U.S. at 533; **Moffett v. State**, 49 So. 2d 1073, 1087-1088 (Miss. 2010); **Jenkins**, 947 So. 2d at 276-77; **Manix**, 895 So. 2d at 176.

[7]**Doggett**, 505 U.S. at 652.

4

***Barker*** factors,[8] and the burden of persuasion shifts to the State to establish good cause for the delay.[9]

*Reasons for delay*

¶9. The Court of Appeals found the record contained evidence of the delay and noted the overcrowded docket as the reason. "Overcrowded dockets" falls within the realm of neutral reasons for delay but should be considered since the "ultimate responsibility for such circumstances must rest with the government."[10] Contrary to what the dissent may believe, the record sheds light on the reason for delay. The trial court found the delay was necessary due to the backlog of cases, and noted that several, older cases were set before Johnson's that may have caused his case to be put off until the court's next term. Further, the State provided three trial dates from the computer system used throughout Hinds County, which showed that Johnson's case had been set for trial three months after he was arraigned. At most, this prong weighs slightly against the State.

*Whether defendant asserted his right to a speedy trial.*

¶10. The State bears the burden of bringing a defendant to trial.[11] But where the defendant

---

[8]***Jenkins***, 947 So. 2d at 276; ***Manix***, 895 So. 2d at 176 (citing ***Barker***, 407 U.S. at 530.)

[9]***Jenkins***, 947 So. 2d at 276-77.

[10]***Barker***, 407 U.S. at 531; ***State v. Magnusen***, 646 So. 2d 1275, 1282 (Miss. 1994) (citing ***Adams v. State***, 583 So. 2d 165, 167 (Miss. 1991) (citations omitted)).

[11]***Ross***, 605 So. 2d 17, 24 (Miss. 1992); ***Flores v. State***, 574 So. 2d 1314, 1321 (Miss. 1990).

asserts his right to a speedy trial, "he gains far more points" under this prong of **Barker**.[12]

Johnson asserted his right to a speedy trial. This prong weighs in Johnson's favor.

*Prejudice to the defendant*

¶11. We start this discussion with this Court's inconsistent analysis of this prong, and which party bears the risk of nonpersuasion. In **State v. Ferguson**, the Court proposed that "[w]here the delay has been presumptively prejudicial, the burden falls upon the prosecution" to show the lack of prejudice to the defendant.[13] The **Ferguson** Court relied on a Fifth-Circuit case, **Prince v. Alabama**,[14] to support this proposition. In **Prince**, the Fifth Circuit held that a *defendant* must first establish a prima facie case that his right to a speedy trial has been violated before the burden shifts to the State to show that the defendant was not prejudiced by the delay.[15] The defendant in **Prince** claimed "that his defense has been impaired due to the lapse of time both in the disappearance or death of key alibi witnesses and in the dimming of the memories of those witnesses who were available at trial," and the record held evidence of personal prejudice to the defendant as well.[16] Further, the defendant in **Ferguson** had asserted claims of prejudice in the form of missing witnesses, and the record contained evidence of such. So in both cases, each defendant produced evidence of prejudice before the

---

[12]**Thomas v. State**, 48 So. 3d 460, 476 (Miss. 2010) (citing **Jefferson v. State**, 818 So. 2d 1099, 1107-1108 (Miss. 2002)); **Brengettcy v. State**, 794 So. 2d 987, 994 (Miss. 2001); **Jaco v. State**, 574 So. 2d 625, 632 (Miss. 1990).

[13]**State v. Ferguson**, 576 So. 2d 1252, 1255 (Miss. 1991).

[14]**Prince v. Alabama**, 507 F. 2d 693 (5th Cir. 1975).

[15]*Id*.

[16]*Id*. at 706-707.

burden shifted to the State to show the lack thereof. But Johnson does not come close to showing a prima facie case of actual prejudice, nor does the record reveal that Johnson suffered any prejudice other than being incarcerated. This Court will not infer prejudice out "of the clear blue."[17]

¶12. Until *Ferguson*, Mississippi caselaw did not require that the State bear the burden under the fourth prong of *Barker*, where the delay was presumptively prejudicial.[18] And even after *Ferguson*, this Court has declined to shift the burden to the State in cases where the delay was presumptively prejudicial.[19]

¶13. In *Moffett v. State*, the defendant was incarcerated for 1,656 days before his trial, which the Court found presumptively prejudicial.[20] But even so, the burden remained with Moffett to show actual prejudice under the fourth prong of *Barker*.[21] In *Jenkins v. State*, 626 days passed between Jenkins's arrest and his trial, which the Court found to be

---

[17]*Manix*, 895 So. 2d at 177 (citing *Magnusen*, 646 So. 2d at 1284); *see also Moffett v. State*, 49 So. 2d at 1087-1088; *Jenkins*, 947 So. 2d at 276; *Stark v. State*, 911 So. 2d 447, 453 (Miss. 2005); *Hersick v. State*, 904 So. 2d 116, 124 (Miss. 2004); *Sharp v. State*, 786 So. 2d 372, 381 (Miss. 2001).

[18]*See Smith v. State*, 550 So. 2d 406, 409 (Miss. 1989); *Hughey v. State*, 512 So. 2d 4, 8 (Miss. 1987); *Beavers v. State*, 498 So. 2d 788, 791-92 (Miss. 1986).

[19]*See Moffett*, 49 So. 2d at 1087-1088; *Jenkins*, 947 So. 2d at 276 (Miss. 2006); *Manix*, 895 So. 2d at 176 ; *Price v. State*, 898 So. 2d 641, 649-650 (Miss. 2005); *Stark*, 911 So. 2d at 453; *Hersick*, 904 So. 2d at 124; *Sharp*, 786 So. 2d at 381; *Stogner v. State*, 627 So. 2d 815, 819 (Miss. 1993).

[20]*Moffett*, 49 So. 2d at 1086-1087.

[21]*Id*.

7

presumptively prejudicial.[22] The Court went on to discuss the remaining *Barker* factors. But the Court's analysis under the "prejudice" prong of *Barker* never included shifting the burden from the defendant to the State to show the lack of actual prejudice, even though the delay was presumptively prejudicial.[23]

¶14.    In *Manix v. State*, 1,430 days elapsed between the date of arraignment and trial.[24] Of course, this delay was presumptively prejudicial.  Even so, the Court did not shift the burden to the State to show the lack of actual prejudice under the "prejudice" prong of *Barker*.[25] And, in *Sharp v. State*, 731 days passed between Sharp's arrest and trial, which exceeded the eight-month threshold and established presumptive prejudice.[26] Nevertheless, the Court did not shift the burden from the defendant to the State under the "prejudice" prong of *Barker*.[27]

¶15.    The dissent maintains that, "[I]n *Ferguson*, this Court followed *Moore* exactly," with regard to the prejudice prong.  But a closer reading of *Moore v. Arizona* indicates otherwise. In *Moore*, the United States Supreme Court addressed Arizona's misreading of *Barker*, in which the court expressly rejected any notion that an affirmative showing of prejudice was

---

[22]*Jenkins*, 947 So. 2d at 276.

[23]*Id*. at 277.

[24]*Manix*, 895 So. 2d at 172.

[25]*Id*. at 176.

[26]*Sharp*, 786 So. 2d at 380 (citing *Skaggs v. State*, 676 So. 2d 897, 900 (Miss. 1996)).

[27]*Id*. at 381.

8

necessary *to prove a denial of a constitutional right to a speedy trial.*[28]  *Moore* was clear that

under the prejudice prong, prejudice must be shown in order for the defendant to win that

prong of *Barker.*[29]  The *Moore* Court emphasized that no single factor is a necessary or

sufficient condition to the finding of a deprivation of the right to a speedy trial.[30]  So while

an affirmative demonstration of prejudice is not necessary to prove a denial of the

constitutional right to a speedy trial,[31] common logic reveals that, if a defendant is to win the

fourth prong of the *Barker* analysis, he must show that he, or his defense, suffered some type

of prejudice.[32]  A closer look at the clear prescription outlined in *Barker* reveals the same.

¶16.    Under the prejudice prong of *Barker*, the Court is to consider prejudice to the

defendant, bearing in mind three interests: (1) prevent oppressive pretrial incarceration; (2)

minimize anxiety and concern of the accused; and (3) limit the possibility that the defense

will be impaired.[33]  *Barker* does not mention which party bears the burden of persuasion

---

[28]*Moore v. Arizona*, 414 U.S. 25, 26, 94 S. Ct. 188, 189, 38 L. Ed. 2d 183, 185 (1973).

[29]*Id*. at 26-27, 94 S. Ct. at 190 ("Moreover, prejudice to the defendant caused by delay . . . is not confined to the possible prejudice to his defense . . . . Inordinate delay . . . may seriously interfere with the defendant's liberty . . . .").

[30]*Moore*, 414 U.S. at 26, 94 S. Ct. at 189.

[31]*See Id.*

[32]*Polk v. State*, 612 So. 2d 381, 387 (Miss. 1992), *overruled on other grounds* by *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 39 (Miss. 2003)  ("[w]ithout a showing of prejudice, this prong of the balancing test cannot weigh in favor of the defendant.").

[33]*Jenkins*, 947 So. 2d at 277 (citing *Mitchell v. State*, 792 So. 2d 192, 213 (Miss. 2001)); *Barker*, 407 U.S. at 531.

under this prong. Yet, in its analysis of the prejudice prong, the Court noted that Barker *made no claim* that any of his witnesses had died or otherwise had become unavailable owing to the delay, and concluded that there was an absence of serious prejudice under the fourth prong. And since the defendant is clearly in the best position to show prejudice under the "prejudice" prong, the burden remains with him, as this Court,[34] and even our learned colleague in the dissent,[35] have determined previously.

¶17. We now move forward and consider the three interests under the fourth prong: oppressive incarceration, anxiety or concern, and impairment of defense. Although Johnson's pretrial incarceration was lengthy, incarceration alone does not constitute prejudice.[36] Mississippi caselaw does not recognize the negative emotional, social, and economic impacts that accompany incarceration as prejudice.[37] This Court will not indulge in an assumption,

---

[34]*See Moffett*, 49 So. 3d at 1087-1088 ("We find that Moffett failed to meet his burden of showing actual prejudice. Even if we were to indulge in an assumption of prejudice, Moffett failed to show intentional device on the part of the State in delaying the trial."); *Stogner v. State*, 627 So. 2d 815, 819 (Miss. 1993) ("Stogner failed to prove that he was prejudiced."); *see also Jenkins*, 947 So. 2d at 276; *Manix*, 895 So. 2d at 176; *Sharp*, 786 So. 2d at 381.

[35]*Hersick v. State*, 904 So. 2d 116, 124 (Miss. 2004) (in this opinion, authored by Presiding Justice Dickinson, the Court stated "[B]ecause of *Hersick's failure to demonstrate that he was 'oppressed,' that he suffered anxiety and concern (other than concern regarding sitting in jail), or that his defense was impaired by the delay, this factor favors the State*.") (emphasis added); *Stark*, 911 So. 2d at 453 (in an opinion also authored by Presiding Justice Dickinson, the Court noted that "*Stark fails to suggest any evidence, potential witness, or case theory which escaped his reach because of the delay*.") (emphasis added).

[36]*Jenkins*, 947 So. 2d at 278.

[37]*Id*. at 277 (citing *Manix*, 895 So. 2d at 177 (citation omitted)) (In *Manix*, the Court cited, and thereby adopted with a vote of 8-0, the language found in the *Hughey* dissent regarding not recognizing "negative, emotional, social and economic impacts" as prejudice.)

as does the dissent, that Johnson experienced anxiety and concern from his incarceration. And while the dissent disagrees with this Court's decision to weigh this prong against Johnson, it remains evident that Johnson put forth absolutely no evidence that he has ever suffered symptoms of anxiety and concern as a result of his incarceration. In order for this prong to favor any defendant, evidence of legitimate anxiety and concern (medical records, documentation from the jail, etc.) must exist.[38]

¶18. Moreover, the possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice as a result of the delay.[39] Generally, this Court will find prejudice where "there was a loss of evidence, the death of a witness, or the investigation became stale."[40] None of these occurred here. Johnson failed to show how the delay prejudiced his defense in any way, nor does the record reveal any prejudice to Johnson or his defense. In fact, the State pointed out that Johnson was able to secure an alibi witness because of the delay,[41] and the record reveals that a fundamentally fair trial occurred despite the delay. At best, Johnson's assertion of prejudice

---

*See Hughey*, 512 So. 2d at 11.

[38]*See Magnusen*, 646 So. 2d at 1285.

[39]*Id*. (citing *Sharp*, 786 So. 2d at 381).

[40]*Magnusen*, 646 So. 2d at 1285; *Manix*, 895 So. 2d at 177; *Sharp*, 786 So. 2d at 381.

[41]Johnson did not call this witness at trial.

can be attributed solely to his incarceration, which, without more, is insufficient to warrant reversal.[42]  Thus, this prong weighs in favor of the State.

¶19.    Under the dissent's logic, the State must "prove a negative" and provide evidence of the absence of prejudice to Johnson's defense.  Thus, the State would have to pursue every possible avenue in search of potential lost witnesses and evidence, and question every possible person connected with Johnson and the alleged crime.  This logic is tantamount to buying ocean-front property in Arizona; it can't be done.

¶20.    Additionally, we address the dissent's comments regarding this Court's "undue emphasis on the prejudice factor," and its belief that the right to a speedy trial does not serve to prevent prejudice.[43]  A close reading of *Barker* reveals that even the United States Supreme Court found that the absence of serious prejudice (coupled with the fact that the defendant did not want a speedy trial) *outweighed* the other two prongs; the length of delay (five years), and the reason for delay (the State failed to provide good reason for the delay).[44]  So this Court's emphasis on the prejudice prong is not as startling as the dissent claims.  Further, it is well-established that the speedy-trial right is an important safeguard to prevent prejudice to the defendant and his defense, among other things, so this Court's belief "that

---

[42]*Jenkins*, 945 So. 2d at 277 (citing *Ross v. State*, 605 So. 2d 17, 23 (Miss. 1992)); *Hersick*, 904 So. 2d at 124; *Williamson v. State*, 512 So. 2d 868, 877 (Miss. 1987).

[43] Diss. Op. at ¶ 71.

[44]*Barker*, 407 U.S. at 534, 92 S. Ct. at 2194.

prejudice is what the constitutional right to a speedy trial was intended to prevent" is not so "mistaken."[45]

¶21. Lastly, the dissent makes a bold claim that, "given the history and trend of speedy-trial motions in Mississippi . . . viewed against the backdrop of our precedent . . . the right to a speedy trial is simply no longer recognized in Mississippi." While we greatly disagree with such an assertion, it should be noted that our learned colleague has had a hand in crafting the very "trend" at which he now balks.[46]

¶22. In conclusion, this Court has stated "that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim."[47] After considering all of the relevant circumstances and factors, we affirm the Court of Appeals and the trial court.

**II. Whether Johnson's for-cause challenges should have been granted**.

¶23. In his second assignment of error, Johnson contends that his constitutional right to an impartial jury was violated because he was forced to use two of his six peremptory challenges on two jurors who should have been excused for cause by the trial court. The Court of Appeals found that this issue lacked merit, because Johnson failed to show how he

---

[45]*See **United States v. Ewell**, 383 U.S. 116, 120, 86 S. Ct. 773, 776, 15 L. Ed. 2d 627 (1966).

[46] *See **Moffett**, 49 So. 3d 1073; **Williams v. State**, 53 So. 3d 734 (Miss. 2010); **Scott v. State**, 8 So. 3d 855 (Miss. 2008); **Jenkins**, 947 So. 2d 270; **Manix**, 895 So. 2d 167; **Price v. State**, 898 So. 2d 641 (Miss. 2005); **Stark**, 911 So. 2d 447; **Hersick**, 904 So. 2d 116.

[47]***Stevens***, 808 So. 2d at 918 (citing **Duplantis v. State**, 708 So. 2d 1327, 1336 (Miss. 1998)); **Perry v. State**, 637 So. 871, 876 (Miss. 1994).

was prejudiced as a result of the trial court's rulings, as the jurors ultimately were excluded. We agree.

¶24. The mere loss of a peremptory challenge is not enough to constitute a violation of the constitutional right to an impartial jury.[48] "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his constitutional rights."[49] And this Court has expressed two prerequisites that a defendant must show before a claim related to the denial of a challenge for cause may be made: (1) the defendant must have exhausted all of his peremptory challenges; and (2) an incompetent juror must be forced by the trial court's erroneous ruling to sit on the jury.[50]

¶25. Even though Johnson used all of his peremptory challenges, he fails to meet the second prerequisite. The two jurors in question did not sit on the jury. And Johnson does not argue, or much less show, that any of the jurors who sat on the jury were biased or incompetent. Therefore, we need not address whether the trial court erred in denying Johnson's for-cause challenges. This issue is without merit.

**CONCLUSION**

¶26. Because none of Johnson's constitutional rights were violated, we agree with the Court of Appeals and affirm the trial court.

---

[48] *Mettetal v. State*, 615 So. 2d 600, 603 (Miss. 1993).

[49] *Id.* (citing *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S. Ct. 2273, 2278, 101 L. Ed. 2d 80, 90 (1988)).

[50] *Christmas v. State*, 10 So. 3d 413, 423 (Miss. 2009) (citing *Mettetal*, 615 So. 2d at 603).

¶27. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**CARLSON, P.J., AND RANDOLPH, J., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. WALLER C.J., JOINS THIS OPINION IN PART. KING, J., NOT PARTICIPATING.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶28. Because I believe that Johnson's constitutional right to a speedy trial was violated, I respectfully dissent. I join Presiding Justice Dickinson's dissent in part only to the extent that he finds that a speedy-trial violation occurred under the facts of this specific case.

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶29. It is no secret that, for the past twenty years, the Sixth-Amendment right to a speedy trial has been under attack and on life support. Although this Court's previous decisions have suggested that—given the right set of facts—a speedy-trial claim could possibly be won, today's final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today's plurality opinion is as subtle as a stick of dynamite—the Sixth-Amendment right to a speedy trial in Mississippi is dead.

¶30. In previous cases, this Court at least paid lip service to a few speedy-trial maxims, such as "an eight-month delay is presumptively prejudicial" and "no single *Barker* factor controls" (both discussed later). But today, the plurality—purporting to overrule *Smith v. State* and its progeny, and ignoring *Flora v. State*, *Ferguson v. State*, and their

15

progeny—makes crystal clear this Court's position on the right to a speedy trial: the life-support plug has been pulled, and the right to a speedy trial exists no more.[51]

¶31.    Because I believe the Sixth-Amendment right to a speedy trial is as important to us today as it was when it was proposed by our Founding Fathers in 1789, and ratified by the people in 1791, I respectfully dissent.

### BACKGROUND FACTS AND PROCEEDINGS

¶32.    After he was indicted, Virgil Johnson quickly moved—*pro se*, in writing—for a speedy trial.  When he didn't get one, he moved—*pro se*, in writing—for dismissal.  He never requested a continuance.

¶33.    At the beginning of the hearing on Johnson's speedy-trial motion—despite the 680-day delay—the trial judge observed that Johnson's trial seemed "pretty speedy."  The State, in addressing why Johnson's trial had been delayed for 680 days, offered only a casual comment that "it was just due to a congested trial docket."  How crowded, we do not know, as the record includes no evidence to support the State's claim.

¶34.    Then, in the following exchange with Johnson's counsel, Donald Boykin, the trial judge addressed prejudice:

> THE COURT:    What's the prejudice?  The record speaks for itself as I said before.
>
> MR. BOYKIN:    I understand.
>
> THE COURT:    What's the prejudice to the defendant?

---

[51] Actually, since today's case is decided by a plurality rather than a majority, there is some small chance that a spark of life still burns.  We'll see.

16

MR BOYKIN:        I'm prepared to put him on the witness stand, Your Honor.

THE COURT:        I'm asking you. We're not taking any testimony at this time. You're going to make the argument to the Court what the prejudice is, and then we're going to pick a jury and try the defendant.[52]

¶35.   The trial court denied Johnson's motion, and the case proceeded to trial. Johnson was convicted. He filed a timely appeal, arguing (among other things) that he was denied his constitutional right to a speedy trial.

## I.

**Since 1992, the Sixth-Amendment right to a speedy trial has been on life support in Mississippi.**

¶36.   In 1972, the United States Supreme Court handed down *Barker v. Wingo*,[53] which established four factors (the *Barker* factors, discussed later) state courts must consider when analyzing Sixth-Amendment speedy-trial issues. In the forty years since *Barker*, this Court has applied the *Barker* factors to speedy-trial issues in ninety-eight cases—forty before 1992, and fifty-eight since.

¶37.   Of those first forty cases, all decided prior to 1992, this Court found speedy-trial violations approximately one-fourth of the time. But in the fifty-eight cases decided since

---

[52] This statement reminds me of a judge, now deceased, who was fond of saying, "Marshal, bring in the criminals and let's give' em a fair trial!"

[53] *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

17

1992, this Court has not found a single violation. Fifty-eight cases in a row over the past nineteen years—and all decided in favor of the State.[54]

¶38. This appalling statistic cannot be explained by a more efficient judiciary that provides quicker trials; indeed, a review of the cases reveals that delays have been getting *longer*.[55] Nor can it be explained by changes in the federal law (***Barker*** remains unchanged, and controlling). Sadly, it seems this Court simply no longer is willing to enforce an accused's constitutional right to a speedy trial.

¶39. The plurality—pointing out that, as a member of the post-1992 Court, I personally have "had a hand in crafting the very trend" I now criticize[56]—raises an interesting point. Since beginning my term on this Court in 2004, I have participated in twelve speedy-trial cases.[57] I concurred "in result only" in two of them,[58] dissented in three,[59] and either wrote or joined the majority in the rest. So of the speedy-trial cases in which I have participated,

---

[54] The last case this Court reversed on Sixth Amendment speedy-trial grounds was ***Jenkins v. State***, 607 So. 2d 1137 (Miss. 1992).

[55] Between 1974 and 1992, the average delay in opinions that included the time of delay was 539 days. Since 1992, the average delay has been 609 days. *See* Appendix A.

[56] Plur. Op. at ¶ 21.

[57] ***McBride v. State***, 61 So. 3d 138, (Miss. 2011); ***Thomas v. State***, 48 So. 3d 460 (Miss. 2010); ***Moffett v. State***, 49 So. 3d 1073 (Miss. 2010); ***Scott v. State***, 8 So. 3d 855 (Miss. 2008); ***Murray v. State***, 967 So. 2d 1222 (Miss. 2007); ***Jenkins v. State***, 947 So. 2d 270 (Miss. 2006); ***Flora v. State***, 925 So. 2d 797 (Miss. 2006); ***Stark v. State***, 911 So. 2d 447 (Miss. 2005); ***Price v. State***, 898 So. 2d 641 (Miss. 2005); ***Manix v. State***, 895 So. 2d 167 (Miss. 2005); ***Young v. State***, 891 So. 2d 813 (Miss. 2005); ***Hersick v. State***, 904 So. 2d 116 (Miss. 2004).

[58] ***Scott***, 8 So. 3d 855; ***Jenkins***, 947 So. 2d 270.

[59] ***McBride***, 61 So. 3d 138; ***Thomas***, 48 So. 3d 460; ***Flora***, 925 So. 2d 797.

18

I would have reversed one-quarter—a percentage almost identical to this Court's pre-1993 reversal rate of constitutional speedy-trial cases.

## II.

**We are required to apply the *Barker* factors, all four of which weigh in favor of Johnson.**

¶40.    The U.S. Constitution's Supremacy Clause requires all state courts to recognize federal law—including the provisions of the United State Constitution—as "the supreme law of the land."[60]  One such constitutional provision—the Sixth Amendment[61]—guarantees the accused in a criminal case a speedy and public trial.[62]

### A.  The *Barker* factors

¶41.    Forty years ago, the United States Supreme Court decided ***Barker v. Wingo***[63] and set forth four factors to be used by state and federal courts in analyzing Sixth-Amendment speedy-trial issues.  The four ***Barker*** factors are:  "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[64]  And to the extent the United States Supreme Court has instructed how these factors must be applied, this Court is not free to improvise.  But in balancing the ***Barker*** factors, this Court has said:

---

[60] U.S. Const. art. VI, cl. 2.

[61] U.S. Const. amend. VI.

[62] To appreciate the importance of the Sixth Amendment, one need only consider Edmond Dantès's consignment to the Château d'If in "*The Count of Monte Cristo*."

[63] ***Barker***, 407 U.S. at 530.

[64] ***Id.***

19

The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of non-persuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.[65]

¶42. Most would agree that our precedent should provide stability, consistency, and predictability to the law. But this Court's method of weighing and balancing the **Barker** factors has so significantly shifted since **Barker** was decided in 1972, that recent opinions bear no resemblance to those of a few decades ago.

### 1. Length of Delay

¶43. The first **Barker** factor—length of delay—generally concerns the length of time that passes from an accused's arrest until trial.[66] This Court, addressing a 370-day delay in **Smith v. State**, held:

> What length of time must elapse before *prejudice will be presumed?* While there are some exceptions to the rule, "it may generally be said that 'any delay of eight months or longer is 'presumptively prejudicial.'"[67]

¶44. **Smith** and its twenty-year progeny clearly hold that "prejudice will be presumed" when a trial is delayed for "eight months or longer," and that an eight-month delay requires

---

[65] **Price**, 898 So. 2d at 648 (citing **Beavers v. State**, 498 So. 2d 788, 790 (Miss. 1986)).

[66] **United States v. Hill**, 622 F.2d 900, 909 (5th Cir. 1980) ("The Sixth Amendment clock begins to tick upon indictment when no prior arrest on the alleged offense is involved.") (citing **Dillingham v. United States**, 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975) (per curiam); **United States v. Marion**, 404 U.S. 307, 320–21 (1971)).

[67] **Smith v. State**, 550 So. 2d 406, 408 (Miss. 1989) (emphasis added) (citing 2 W. LaFave & J. Israel, *Criminal Procedure* § 18.2 (1984) (quoting Gregory P.N. Joseph, *Speedy Trial Rights in Application*, 48 Fordham L. Rev. 611, 623 n.71 (1980))).

analysis of the remaining three **Barker** factors.[68]  Also, an eight-month delay causes this first

factor—length of delay—to weigh in favor of the defendant.[69]

¶45.   So if (as our precedent indicates) we really do presume prejudice at eight months (240

days), we certainly must presume it at 680 days, the length of delay in this case.

Interestingly, the delay in this case is longer than the delay in almost all of the post-**Barker**

cases reversed by this Court on constitutional speedy-trial grounds.[70]

¶46.   On the "presumptively prejudicial" point, the plurality takes an interesting position

addressed in the "Prejudice" discussion below.  But for purposes of analyzing the first

**Barker** factor, the plurality concedes (1) that the 680-day delay is, indeed, presumptively

prejudicial, (2) this factor weighs in Johnson's favor, and (3) that we must analyze the

remaining three **Barker** factors.

### 2.  Reason for the delay

¶47.   The plurality correctly recognizes that where (as here) the length of delay is

presumptively prejudicial, the burden shifts to the State to provide a satisfactory reason for

---

[68] *See, e.g.,* ***Thomas***, 48 So. 3d at 475;  ***Murray***, 967 So. 2d at 1230;  ***Jenkins***  947 So. 2d at 276;  ***Manix***, 895 So. 2d at 176;  ***Young***, 891 So. 2d at 817.

[69] *See, e.g.,* ***Price***, 898 So. 2d at 648; ***Manix***, 895 So. 2d at 176; ***Stevens v. State***, 808 So. 2d 908, 916 (Miss. 2002);  ***Herring v. State***, 691 So. 2d 948, 955 (Miss. 1997);  ***Moffett,*** 49 So. 3d at 1086;  ***Stark***, 911 So. 2d at 450;  ***Hersick***, 904 So. 2d at 121;  ***Brengettcy v. State***, 794 So. 2d 987, 992 (Miss. 2001).

[70] ***State v. Ferguson***, 576 So. 2d 1252 (Miss. 1991) (288 days); ***Flores v. State***, 574 So. 2d 1314 (Miss. 1990) (610 days); ***Smith v. State***, 550 So. 2d 406 (Miss. 1989) (370 days); ***Beavers v. State***, 498 So. 2d 788 (Miss. 1986) (423 days); ***Bailey***, 463 So. 2d 1059 (298 days); ***Burgess v. State***, 473 So. 2d 432 (Miss. 1985) (16 months); ***Perry v. State***, 419 So. 2d 194 (Miss. 1982) (566 days).

the delay.[71]  But then, the plurality's analysis of this factor is flawed by its incorrect understanding of what happened at the hearing on Johnson's motion.

### A. *Crowded docket*

¶48.  The plurality correctly points out that the trial judge said there were several "older cases" that were set before Johnson's, which "may have" caused his case to be put off.  This statement has several problems.

¶49.  First, "may have caused" hardly rises to the level of evidence.  Second, in referring to "older cases," the trial judge was referring to Johnson's date of arraignment (not relevant in a *Barker* analysis), rather than his date of arrest.

¶50.  Finally, we pretty clearly said in *Flora v. State* that "[t]his Court should not be expected to simply accept at face value the claims of crowded dockets, backlogged laboratory testing, and other similar logistical problems, which undeniably exist."[72]  So the plurality says we now accept at face value the claims of crowded dockets.  This holding ignores our precedent in *Flora v. State*.

### B. *Trial dates*

¶51.  The plurality mistakenly believes the State produced trial dates from the computer system used throughout Hinds County, which showed that Johnson's case had been set for trial three months after he was arraigned.  The record before us does not support this claim.  Here's what really happened:

---

[71] Plur. Op. at ¶ 8 (citing *Jenkins*, 947 So. 2d at 276 –77).

[72] *Flora*, 925 So. 2d at 817 (weighing the "reason-for-delay" factor in favor of defendant).

¶52. At the pretrial hearing on Johnson's motion to dismiss, the prosecutor stated that "[t]he first trial setting was July 16th of '07 from the record that I've seen." When Johnson's attorney challenged the State to produce proof of that date from the docket or otherwise, the prosecutor could not. And the appellate record, which includes the trial court's docket sheet, indicates that Johnson had no trial setting earlier than March 11, 2008. No other proof of a trial date—or of an overcrowded docket—was produced by anyone.

C. *Even if the delay was caused by an overcrowded docket, this factor—according to **Barker**—weighs in favor of Johnson.*

¶53. Because the State produced no evidence to explain the delay, this second **Barker** factor—reason for the delay—should weigh in favor of Johnson. The **Barker** Court stated:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or *overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.* Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.[73]

¶54. First, it is noteworthy that the United States Supreme Court does not include "overcrowded courts" in the "valid reason" category. But more importantly, **Barker** holds that an overcrowded docket, while "more neutral" than "deliberate delay," still must be weighed against the State because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[74]

---

[73] **Barker**, 407 U.S. at 531 (emphasis added).

[74] *Id.*

23

¶55. The plurality awards this second **Barker** factor "slightly" to Johnson. Even though the plurality's appreciation of the facts and law on this point are quite different from mine, I do not quarrel with this point. Johnson has, so far, won two out of two factors.

### 3. Assertion of the right

¶56. The plurality concedes that Johnson wins this factor. According to **Barker**, a "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."[75] The term "assertion of the right" means to make a demand for a speedy trial. As we have said more than once, a defendant "gains far more points under this prong of the **Barker** test where he has *demanded* a speedy trial."[76] Johnson did.

¶57. Less than two months after he was indicted, Johnson filed a *pro se* "motion for a fast and speedy trial." After filing a *pro se* motion to dismiss for violation of his speedy-trial right, Johnson filed what he called a "Motion to Compel," in which he stated:

> Petitioner has several motions pending in court and seeks to swiftly bring them before a magistrate for review to wit: Motion for Fast and Speedy Trial . . . Motion to Dismiss For Failure to Provide a Fast and Speedy Trial . . . .

¶58. Johnson's motions were heard on the morning of trial. Nowhere in the transcript of proceedings before the trial court—or in its brief to this Court—does the State even hint that it thinks Johnson should have (or could have)[77] set his motion for hearing earlier.

---

[75] **Barker**, 407 U.S. at 531–32.

[76] **Ferguson**, 576 So. 2d at 1255 ; **Jaco v. State**, 574 So. 2d 625, 632 (Miss. 1990) (emphasis added).

[77] It appears Johnson could not have brought up his motion for hearing, even if he wanted to. According to the trial court's local rule: "Hearings are not automatically granted.

¶59. To its credit, the plurality does not contest that, by winning this factor, Johnson is entitled to the "strong evidentiary weight" referred to in **Barker**, and the extra **Barker** "points" referred to in **Jaco** and **Ferguson**. So this factor weighs "strongly"[78] in Johnson's favor, and he has now won all three of the first three factors.

*This Court's inconsistent record on three-to-one cases is disturbing.*

¶60. Before moving to the fourth and final **Barker** factor, I pause to make a brief observation about where we are at this point. So far, the first three **Barker** factors clearly weigh in favor of Johnson. Giving the plurality the benefit of the doubt, here is how the factors stack up:

¶61. *Length of delay.* Because the length of delay in this case is almost triple the eight-month threshold delay that triggers the presumption of prejudice, this factor surely weighs heavily in Johnson's favor. *Reason for the Delay.* This factor, according to the plurality, weighs slightly in Johnson's favor. *Assertion of the right.* This factor weighs heavily in Johnson's favor.

¶62. And as set forth below, I believe the fourth factor—prejudice—also weighs in his favor. But even assuming it doesn't, Johnson wins three factors (two heavily) and loses one. This Court has been confronted with this same three-to-one scenario eighteen times in the forty-year history of the **Barker** factors—five times through 1992, and thirteen times since. An analysis of those eighteen cases is both instructive and disturbing.

---

. . . Should the court require a motion hearing, the party filing the motion shall be notified by the court." Judge Tomie Green, *Procedures for Pretrial Matters* Rule 1 (Rev. Sept. 2008).

[78] **Barker**, 407 U.S. at 531–31.

¶63.   This Court found speedy-trial violations and reversed *all five* of the three-to-one cases decided through 1992.[79]  So during this Court's first twenty years of **Barker** analysis, it backed up its perennial claim that no single **Barker** factor is controlling.[80]  But since 1992, this Court has reversed—none.  The last thirteen times in a row this Court has reviewed cases in which three of the **Barker** factors weighed in favor of the defendant, it found no speedy-trial violation.[81]

¶64.   The only conclusion one can fairly draw from reviewing the three-to-one cases decided since 1992 is that, in reality, defendants cannot win speedy-trial claims before this Court unless they win all four factors.  And given this Court's history, even if a defendant could do all that, there's still no reason to believe the defendant would actually prevail.

### 4.  Prejudice

¶65.   In analyzing the prejudice factor, the plurality's main concern seems to be who had the burden of proof.  Yet the plurality seems to be untroubled by the fact that, when the

---

[79] **Flores**, 574 So. 2d 1314;  **Smith**, 550 So. 2d 406;  **Vickery v. State**, 535 So. 2d 1371 (Miss. 1988); **Beavers,** 498 So. 2d 788;  **Burgess,** 473 So. 2d 432.

[80] **Thomas**, 48 So. 3d at 475 (citing **Poole v. State**, 826 So. 2d 1222, 1228–1229 (Miss. 2002)); **Moffett**, 49 So. 3d at 1086; **Jenkins**, 947 So. 2d at 276; **Price v. State**, 898 So. 2d at 648 (citing **Beavers,** 498 So. 2d at 790); **Ginn v. State**, 860 So. 2d 675, 683 (Miss. 2003).

[81] **Flora**, 925 So. 2d 797;  **Manix**, 895 So. 2d 167;  **Stevens**, 808 So. 2d 908;  **Arthur v. State**, 735 So. 2d 213 (Miss. 1999);  **Duplantis v. State**, 708 So. 2d 1327 (Miss. 1998); **Hull v. State**, 687 So. 2d 708 (Miss. 1996);  **Skaggs v. State**, 676 So. 2d 897 (Miss. 1996); **Taylor v. State**, 672 So. 2d 1246 (Miss. 1996);  **McGhee v. State**, 657 So. 2d 799 (Miss. 1995);  **Giles v. State**, 650 So. 2d 846 (Miss. 1995);  **Rhymes v. State**, 638 So. 2d 1270 (Miss. 1994);  **Hurns v. State**, 616 So. 2d 313 (Miss. 1993);  **Ross v. State**, 605 So. 2d 17 (Miss. 1992).

defendant, Johnson, attempted to take the witness stand and testify concerning prejudice, the trial judge prohibited him from doing so.

¶66. The plurality's discussion of this factor is perhaps more disturbing than any of the other three. The plurality concedes, as it must, that the United States Supreme Court has stated, more than once, that a defendant is not required to show prejudice affirmatively to win a **Barker** analysis.[82] Then the plurality makes a statement that bears repeating:

> So while an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial,[83] common logic reveals that, if a defendant is to win under the fourth prong of the **Barker** analysis, he must show that he, or his defense, suffered some type of prejudice.[84]

¶67. Well, if "an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial," how in the world can one explain the outcome of the case before us today?

¶68. Conceding (solely for the sake of argument) that there was no "affirmative demonstration of prejudice," even the plurality admits that Johnson won everything else—and two of the factors, he won heavily. So affirmatively demonstrating prejudice was certainly necessary for Johnson "to prove a denial of the constitutional right to a speedy trial."

¶69. Prejudice is the only factor the plurality finds Johnson didn't win, so it is beyond argument that, in this case, it was indeed necessary for *him* affirmatively to prove prejudice.

---

[82] **Moore**, 414 U.S. at 26 (emphasis added).

[83] *See* **Moore v. Arizona**, 414 U.S. 25, 26, 94 S. Ct. 188, 189, 38 L. Ed. 2d 183, 185 (1973).

[84] Plur. Op. at ¶ 15.

Put differently, under the law announced today, how on earth could Johnson or anyone else prevail on a speedy-trial issue *without* affirmatively demonstrating prejudice? The plurality's thinking on this point is far above my head and completely escapes me.

¶70. As already stated, this Court has said many times that no single **Barker** factor should control. But in previous cases, this Court has come perilously close to admitting that a Mississippi defendant's speedy-trial claim is dead unless he shows actual prejudice.[85] Today, all doubt has been removed. Regardless of the length of delay, or the outcome of any other factor, if you don't show prejudice, you lose.

¶71. The plurality's undue emphasis on the prejudice factor may be due, in part, to its mistaken belief that preventing prejudice is what the constitutional right to a speedy trial was primarily intended to accomplish. But the United States Supreme Court cleared that up nearly thirty years ago:

> The Sixth Amendment right to a speedy trial is thus *not primarily intended to prevent prejudice* to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.[86]

¶72. It is not possible to fairly conclude from the plurality opinion anything other than the incorrect notion that the right to a speedy trial is important only to prevent prejudice.

---

[85] *See, e.g., Arthur*, 735 So. 2d at 216 (finding no violation despite the defendant winning three of the four **Barker** factors: "The final **Barker** factor is the resulting prejudice to Arthur. *This is where Arthur loses his argument.*") (emphasis added).

[86] *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982) (emphasis added).

### A. Prejudice presumed

¶73. The plurality makes far too much of the presumptively- prejudicial issue. All it means is that, where the delay is eight months or more *and nothing else gets in the record*, prejudice is presumed. And where the defendant offers no additional evidence of prejudice, the State's burden of overcoming the presumption is light.

¶74. The plurality is due credit for correctly observing that this Court has employed an "inconsistent analysis of this prong" in past cases.[87] Indeed, this Court specifically has said that "identification of the party with the risk of nonpersuasion" is necessary in determining how to weigh each factor.[88] This is important because the State bears the burden of production (or the risk of nonpersuasion) on the prejudice factor where the length of delay is *presumptively prejudicial*.[89]

### B. *The plurality misreads* **Ferguson v. State** *and can't distinguish it.*

¶75. In *Ferguson v. State*, this Court explicitly held: "[T]he burden of production and persuasion are critical. *Where the delay has been presumptively prejudicial, the burden [on the prejudice factor] falls upon the prosecution*."[90] It can't be more clear than that.

¶76. But the plurality—unable to distinguish *Ferguson*—ignores it. It is possible that the plurality's reticence to follow *Ferguson* is explained by its misreading of the case, in which

---

[87] Plur. Op. at ¶ 11.

[88] *Price*, 898 So. 2d at 648 (citing *Beavers*, 498 So. 2d at 790).

[89] Plur. Op. at ¶ 11.

[90] *Ferguson v. State*, 576 So. 2d at 1255 (emphasis added).

29

we relied on ***Prince v. Alabama***[91]—a Fifth-Circuit case; and ***Moore v. Arizona***[92]—a United States Supreme Court case the plurality cannot overrule.

¶77.    The plurality first suggests that we were wrong to rely on ***Prince*** for the proposition that a presumptively prejudicial delay shifts the burden to the State on the prejudice factor, subtly twisting ***Prince***'s language to reach that conclusion.  In ***Prince***, the Fifth Circuit said,

> under our prior holding in ***Hoskins***[ ***v. Wainwright***[93]], where the defendant has established a *prima facie* case of *denial of the speedy trial right*, the burden is upon the State to show that the defendant has not been prejudiced by the delay.[94]

¶78.    The case did *not* hold—as the plurality reads it—that the defendant must first establish a *prima facie* case of *prejudice*, but rather a *prima facie* case "of denial of the speedy trial right."[95]  While the plurality initially acknowledges that the burden shifts to the State on a *prima facie* showing of *violation of the speedy-trial right*, a few sentences later, the plurality morphs this critical language to say that "Johnson does not come close to showing a prima facie case of *actual prejudice* . . . ."[96]

---

[91] ***Prince v. Alabama***, 507 F.2d 693 (5th Cir. 1975).

[92] ***Moore v. Arizona***, 414 U.S. 25, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973).

[93] ***Hoskins v. Wainwright***, 440 F.2d 69, 72 (5th Cir. 1971) (hereinafter "***Hoskins I***").

[94] ***Prince***, 507 F.2d at 707 (emphasis added).

[95] ***Id***.

[96] Plur. Op. at ¶ 11 (emphasis added).

¶79.    Again, a proper reading of *Prince* along with *Hoskins I*—the pre-*Barker* case on which *Prince* relied—clearly reveals that a defendant must make a *prima facie* case of *violation*, not of prejudice, to shift the burden to the State

> by showing that his prosecution was delayed beyond the point at which a probability of prejudice arose, that he was not responsible for the delay, and that the State ought reasonably to have avoided the delay. *In these circumstances the State should be given the burden of proving that the delay was necessary and that no prejudice in fact occurred.*[97]

That was the case in *Ferguson,* and that is the case here.

¶80.    I also note with bemusement that, in its attempt to use *Prince* to prove that *Ferguson* was wrongly decided, the plurality skips right over *Prince*'s observation that

> we are *not compelled to consider the question of prejudice* by reason of our holding in *Hoskins III*[98] . . . , that *prejudice is immaterial where consideration of the other three factors—length of delay, defendant's assertion of his right, and reasons for the delay—coalesce in the defendant's favor* . . . .[99]

This holding could not be more clear: When the defendant wins the first three *Barker* factors, prejudice is immaterial, and the court need not even look at it.  And this holding is not just a peculiarity of the Fifth Circuit.  As *Hoskins III* noted, this conclusion is mandated by *Barker* itself:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such

---

[97] *Hoskins I*, 440 F.2d at 72 (emphasis added) (citing *Dickey v. Florida*, 398 U.S. 30, 56, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970)).

[98] *Hoskins v. Wainwright*, 485 F.2d 1186, 1192 (5th Cir. 1973) (hereinafter *Hoskins III*) (emphasis added).

[99] *Prince*, 507 F.2d at 706–07 (emphasis added).

31

other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[100]

If this means what it says, there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice—*either actual or presumed*—becomes totally irrelevant. And so we hold.[101]

¶81. This simply makes sense. If "none of the four factors [is] a necessary . . . condition," this has to mean that a defendant cannot lose the test solely by losing one factor (as Johnson does today). The United States Supreme Court has said it, the Fifth Circuit has said it, and this Court said it in **Ferguson**.

¶82. In **Moore**, the United States Supreme Court reviewed a case in which the Supreme Court of Arizona did[102] exactly what the plurality does today. The defendant had suffered a prolonged delay despite his attempt to secure a speedy trial, and the only reason proffered by the State was overcrowded dockets.[103]

¶83. The Arizona Supreme Court weighed the first three **Barker** factors in favor of the defendant, but nevertheless held that his speedy-trial right was not violated because he had failed to show actual prejudice caused by the delay.[104] On appeal, the United States Supreme Court denounced that conclusion:

---

[100] **Barker**, 407 U.S. at 533, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118.

[101] **Hoskins III**, 485 F.2d at 1192 (emphasis added).

[102] **Arizona v. Moore**, 506 P.2d 242 (Ariz. 1973).

[103] **Id.** at 245.

[104] **Id.**

The state court was in *fundamental error* in its reading of **Barker v. Wingo** and in the standard applied in judging petitioner's speedy trial claim. **Barker v. Wingo** expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial . . . .[105]

¶84.    In **Ferguson**, this Court followed **Moore** exactly.  We held that, because an eight-month delay was presumptively prejudicial, and because the defendant may not be required to affirmatively demonstrate prejudice, it necessarily falls to the State to come forward with some evidence indicating that the delay in fact resulted in no prejudice to the accused.[106] And since **Ferguson**, we have reiterated that same point—albeit inconsistently—in numerous

---

[105] **Moore**, 414 U.S. at 26 (emphasis added).

[106] **Ferguson**, 576 So. 2d at 1255.

other cases.[107]  The plurality now rejects the holdings in ***Hoskins III***, ***Ferguson***, ***Barker***, and

***Moore***.

> C. *The plurality misreads* **Smith v. State***, can't distinguish it, and so purports to overrule it.*

¶85.    After conceding that the delay in this case was *presumptively prejudicial*, the plurality

attempts to redefine the term.  (Stay tuned in case the meaning of "presumed innocent" is

challenged in some future case.)  The phrase "presumptively prejudicial" is not complicated.

Black's Law Dictionary defines a "presumption" as:

> A legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts. . . . *A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption.*[108]

---

[107] *See, e.g.,* ***Ginn***, 860 So. 2d at 684 (quoting ***Ferguson***, 576 So. 2d at 1255) ("We have held: '[W]hen the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant.'"); ***Stevens v. State***, 808 So. 2d at 917 ("Stevens does not bear the burden of proving actual prejudice in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant."); ***Birkley v. State***, 750 So. 2d 1245, 1252 (Miss. 1999) (quoting ***Ferguson***, 576 So. 2d at 1255) ("In analyzing this final factor the Court must also take note of the burden of production and persuasion.  In ***Ferguson***, this Court stated, 'Where the delay has been presumptively prejudicial, the burden falls upon the prosecution.'"); ***Duplantis***, 708 So. 2d at 1335 ("Duplantis does not bear the burden of proving actual prejudice in this case.  On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant."); ***Beckwith v. State***, 707 So. 2d 547, 567 (Miss. 1997) ("Beckwith need not prove actual prejudice to his defense in this case.  On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant."); ***Jasso v. State***, 655 So. 2d 30, 35 (Miss. 1995) ("This Court has stated that the State actually has to show lack of prejudice in order to prevail in this factor."); ***Ross***, 605 So. 2d at 23 ("The analysis must, then, proceed to the other three ***Barker*** factors, in which the state bears the burden of proving no prejudice to the defendant.").

[108] *Black's Law Dictionary* 1304 (9th ed. 2009) (emphasis added).

¶86.    If the phrase "presumptively prejudicial" means anything, it must mean that, in the absence of contrary evidence produced by the State, the court must conclude that the defendant was prejudiced by the delay.

¶87.    But the plurality rejects this straightforward meaning, opting instead to read "presume prejudice" merely to mean "look at the other **Barker** factors."  For support, the plurality cites a footnote in **Doggett v. United States**,[109] in which the United States Supreme Court cited—with approval—a law-review article that discussed the meaning of presumptive prejudice, explicitly acknowledging that presumptive prejudice does indeed shift the burden to the State.[110]

> D.    *The State produced nothing to rebut the three prejudice interests identified in* **Barker**.

¶88.    In **Barker**, the United States Supreme Court identified and discussed three prejudice interests: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defendant's defense.[111]  And since the 680-day delay in this case was presumptively prejudicial, it should fall to the State to rebut the presumption, or the "prejudice" factor must be weighed in favor of Johnson.

> 1.    ***Oppressive Pretrial Incarceration***

---

[109] **Doggett v. United States**, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691, 120 L. Ed. 2d 520 (1992).

[110] H. Richard Uviller, *Barker v. Wingo: Speedy Trial Gets a Fast Shuffle*, 72 Colum.. L. Rev. 1376, 1394–95 (1972) ("[T]he shift of burden actually permits the presumption of prejudice to prevail on the issue.  Since that presumption is well-founded, however, justice is served.").

[111] **Barker**, 407 U.S. at 532.

¶89.    Johnson was in jail the entire time between his arrest and trial.  He made repeated requests for bail reduction, but they were ignored (not denied, ignored).  The State offered nothing in rebuttal.

### 2.    *Anxiety and Concern*

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious.  The time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness. . . . Imposing those consequences on anyone who has not yet been convicted is serious.[112]

¶90.    The plurality refuses to award Johnson this prong because he presented no evidence of "anxiety and concern," never mind that he was prevented from working in order to provide for his child and sick mother,[113] and never mind that the circuit judge refused to allow him to testify at the speedy-trial hearing.  I find inability to fulfill one's role as the sole caretaker of a cancer-ridden mother and a minor child to be more than sufficient to demonstrate legitimate anxiety and concern.[114]  I find it amazing that the circuit judge refused to allow Johnson to testify.  And in any case, the State offered nothing in rebuttal.

### 3.    *Impairment of the Defendant's Defense*

---

[112] *Id.* at 532-33.

[113] Plur. Op. at ¶ 17.

[114] After the circuit judge refused to allow Johnson to testify, this information was provided to the circuit judge by Johnson's lawyer.

¶91. Of the three prongs of the prejudice factor, this one is the "most serious."[115] Aside from referencing a last-minute witness who did not even testify at trial, the State offered nothing to demonstrate that Johnson's defense was not impaired.

¶92. But even assuming the State did not have the burden of production, a defendant is not required to establish actual impairment to succeed on his constitutional speedy-trial claim.[116] An accused who prevails on three of the four *Barker* factors—and who also prevails on two of the three prongs of the fourth *Barker* factor—should not lose the entire *Barker* balancing test solely on this single prong of one of the factors.

F.    *Balancing*

¶93. Although one could fairly debate the weight due each of the first three *Barker* factors,[117] there is no doubt that all three weigh in favor of Johnson. In a case almost on all fours with this one, we held:

> While this record contains little evidence of prejudice, the reason for giving weight to the other factors is the obvious difficulty in establishing through objective hard evidence the fact of prejudice even when it does exist. Moreover, there is nothing in the constitutional provisions at issue qualifying the right to a speedy trial so that its assertion depends upon a showing of

---

[115] *Barker*, 407 U.S. at 532.

[116] *Flores*, 574 So. 2d at 1323 (citing *Trotter v. State*, 554 So. 2d 313, 318 (Miss. 1989)) ("it is clear that an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial").

[117] *See, e.g., Flores*, 574 So. 2d at 1323 ("The only *Barker* factor that does not favor VanEtten is that he did not aggressively assert his right to a speedy trial. All the other *Barker* factors weigh in his favor. Therefore, VanEtten was denied his constitutional right to a speedy trial."); *Smith v. State*, 550 So. 2d at 409 ("The only *Barker* factor which weighs against Smith is that he did not assert his right to a speedy trial until five days before trial began. All the other *Barker* factors weigh in his favor. Based upon a balancing of the four *Barker* factors, we hold that Smith was denied his constitutional right to a speedy trial.").

37

prejudice. *Where, as here, the accused effectively demanded trial and where there was a substantial unjustified delay in bringing him to trial, the fact that the Defendant's prejudice showing is weak avails the prosecution little.*[118]

¶94. So even if one agrees that the prejudice factor favors the State, this case still should be reversed.

Under both ***Barker*** and ***Bailey***[119], three factors weigh against the state: (1) assertion of the right by Burgess, (2) the reason for the delay by the state, and (3) the length of the delay. *These outweigh item (4) prejudice, if the **Barker** and **Bailey** holdings that no one factor is dispositive are to have any meaning at all.*

If this were not so, the state could sit back and deliberately hold criminal charges against a citizen indefinitely so long as the individual could not point out any specific prejudice.[120]

¶95. Constitutional rights are guaranteed to all criminal defendants, regardless of the ultimate disposition of their cases.[121] Today, this Court acquiesces in the violation of Virgil Johnson's Sixth-Amendment right to a speedy trial. Accordingly, I dissent—not because of any personal concern for Johnson himself, but because of my deep concern for the twenty-year erosion of the constitutional right itself.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**

**APPENDIX A**

---

[118] ***Beavers***, 498 So. 2d at 792 (emphasis added) (reversing and rendering).

[119] ***Bailey***, 463 So. 2d 1059.

[120] ***Burgess v. State***, 473 So. 2d at 434 (emphasis added).

[121] ***Id.*** ("Even the indisputably guilty defendant has the constitutional right to a speedy trial.").

The following graph represents every post-***Barker*** case from this Court, in which the length of delay is discernible in the opinion.  For each case, the length of delay (in days) is represented by a dot.  The dashed line was calculated using the "trend line" function in Microsoft Excel, and indicates that the delays generally are getting longer and longer.

